La Jueza Asociada Señora Pabón Charneco
emitió la opinión del Tribunal.
Comparecen ante nos el Sr. José Joaquín López Cámara, su esposa, la Sra. María Elena Matos Garratón, y la Sociedad de Bienes Gananciales compuesta por ambos (en conjunto, los peticionarios), y solicitan la revocación de una Sentencia del Tribunal de Apelaciones. Mediante esta se modificó y confirmó una Sentencia del Tribunal de Primera Instancia que había declarado “con lugar” una Demanda en cobro de dinero presentada por Cruz Consulting Group, Inc. (en adelante, Cruz Consulting), contra los peticionarios y otros.
Nos corresponde resolver si un agente o representante de una tercera persona responde en su carácter personal al *503 firmar un instrumento negociable, específicamente un pagaré, conforme a la Ley Núm. 208-1995, según enmendada, conocida como Ley de Transacciones Comerciales, infra. A continuación exponemos los hechos que dieron génesis a la controversia de autos.
I
El 26 de octubre de 2001, el Sr. Juan Rodríguez Vilá y las corporaciones T/MG Corp., Inc. y Potrero Matos, Inc., ambas representadas por su Presidente, el señor López Cámara, otorgaron una Escritura ante Notario Público con el fin de crear una sociedad especial y en comandita llamada El Legado de Chi Chi Rodríguez Golf Resort (S.C.), S.E. (en adelante, El Legado), cuyo propósito era operar y poseer un proyecto turístico que incluiría un hotel y un campo de golf.(1)
El 28 de mayo de 2003, El Legado contrató a Cruz Consulting para que proveyera servicio de cable TV a las unidades del proyecto turístico.(2) Ese mismo día las partes otorgaron otro Contrato mediante el cual El Legado contrató a Cruz Consulting para que proveyera e instalara equipos digitales inteligentes.(3) Un tercer Contrato fue otorgado entre El Legado y Cruz Consulting el 14 de enero de 2004, en el cual Cruz Consulting se obligó, inter alia, a *504 proveer el material y equipo para instalar servicio de Internet y telefonía.(4) En virtud de los Contratos antes mencionados,(5) la cantidad facturada por Cruz Consulting a El Legado ascendió a cuatrocientos diecinueve mil quinientos sesenta y cuatro dólares con cincuenta y nueve centavos ($419,564.59).(6)
Posteriormente, las partes otorgaron un Contrato titulado Mutual Release, con fecha de 10 de enero de 2006, el cual fue firmado por el señor Cruz en representación de Cruz Consulting y los señores López Cámara y Rodríguez Vilá en representación de El Legado. Tratándose, en esencia, de un Contrato de Transacción entre las partes, estas acordaron que El Legado pagaría la suma de doscientos cincuenta mil dólares ($250,000) a Cruz Consulting a cam-bio de que esta renunciara a toda reclamación que pudiera tener contra El Legado y sus socios que se derivara de los servicios de telecomunicaciones objeto de los Contratos antes mencionados.(7) Según el Anejo A del Mutual Release, los doscientos cincuenta mil dólares ($250,000) se pagarían de la manera siguiente: (a) ciento veinticinco mil dólares ($125,000) pagaderos luego de quince (15) días contados a partir de la fecha del otorgamiento del contrato, y (b) ciento veinticinco mil dólares ($125,000) pagaderos al 1 de diciembre de 2006.(8) La segunda suma de ciento veinticinco mil dólares ($125,000) fue objeto de un Pagaré sus *505 crito ante Notario Público el 13 de febrero de 2006, con fecha de vencimiento de 1 de diciembre de 2006.(9) Al pie del Pagaré constan la firma del señor Rodríguez Vilá como Socio Gestor (Managing Partner) de El Legado, así como la firma del señor López Cámara, también como Socio Gestor (Managing\Partner) de la misma entidad jurídica.(10) Igualmente, en la autenticación de las firmas realizada por el Notario Público se identifica a los señores Rodríguez Vilá y López Cámara como Socios Gestores de El Legado.(11)
Debido a la falta de pago de la segunda suma de ciento veinticinco mil dólares ($125,000) adeudados en virtud del Contrato titulado Mutual Release y el Pagaré antes mencionado, el 21 de febrero de 2007 Cruz Consulting presentó una acción civil en cobro de dinero contra El Legado, el señor Rodríguez Vilá, el señor López Cámara y sus respectivas esposas y Sociedades de Bienes Gananciales. El 10 de mayo de 2007, el señor Rodríguez Vilá, su esposa Iwalani Rodríguez y la Sociedad de Bienes Gananciales compuesta por ambos presentaron una Moción en Solicitud de Sentencia Sumaria Parcial, mediante la cual argumentaron, en síntesis, que El Legado es una sociedad especial de responsabilidad limitada y que fue esta la que firmó y se obligó mediante el Pagaré, por lo que el matrimonio Rodríguez-Rodríguez no debía responder por la deuda reclamada en su carácter personal. Por su parte, el 22 de mayo de 2007 los peticionarios presentaron una Moción de Desestimación ante el foro primario y alegaron que El Legado es una sociedad especial con personalidad jurídica propia, por lo que la responsabilidad de sus socios estaba limitada a sus respectivas aportaciones. Además, plantearon que no eran socios de dicha entidad y que quien único se había obligado a satisfacer la suma adeudada fue El Legado, por lo que no eran responsables por la obligación reclamada en su carác *506 ter personal. Por otro lado, El Legado presentó una Contestación a la Demanda y Reconvención el 24 de mayo de 2007.(12)
Cruz Consulting se opuso a las solicitudes del matrimonio Rodríguez-Rodríguez y de los peticionarios. En cuanto al petitorio de desestimación instado por los peticionarios, alegó que la intención de las partes al otorgar el Pagaré en controversia era que los señores López Cámara y Rodríguez Vilá garantizaban la deuda tanto a nombre de El Legado como en su carácter personal, y que de la Escritura donde se constituyó la sociedad especial surge que el señor López Cámara es el Presidente de las dos (2) corporaciones que figuran como socias de El Legado. Por otro lado, en cuanto a la solicitud de sentencia sumaria parcial presentada por el matrimonio Rodríguez-Rodríguez, Cruz Consulting alegó que tanto el señor Rodríguez Vilá como su esposa eran socios de El Legado, por lo que eran solidariamente responsables por el pago de la deuda contraída por la sociedad especial.
Luego de varios trámites procesales,(13) incluyendo la celebración del juicio en su fondo, el Tribunal de Primera Instancia dictó Sentencia, declarando “con lugar” la Demanda presentada por Cruz Consulting. En lo aquí pertinente, el foro primario razonó que “[l]a única explicación legal para explicar que los co-demandados se obligaron [...] firmando un Pagaré, es que Cruz [Consulting] les requirió una garantía personal y los socios gestores, sus esposas y *507 las Sociedades Legales de Gananciales se la prestaron [...]”.(14) Por lo anterior, determinó que todos los codemandados eran responsables por el pago solidario de la deuda reclamada y evidenciada mediante el Pagaré.
Inconformes con la determinación del foro primario, el 18 de junio de 2012, los peticionarios presentaron un recurso de apelación ante el Tribunal de Apelaciones.(15) El 9 de octubre de 2013, archivada en autos copia de su notificación el 16 de octubre de 2013, el foro apelativo intermedio emitió la Sentencia Enmendada Nunc Pro Tune de la cual se recurre.(16) En su dictamen, el foro apelativo intermedio se limitó a modificar la Sentencia del foro primario a los únicos efectos de eliminar la determinación de solidaridad entre los codemandados López Cámara y Rodríguez Vilá, confirmando así el resto del dictamen del foro primario en toda su extensión.
Insatisfechos, los peticionarios presentaron el recurso de Certiorari que nos ocupa el 14 de noviembre de 2013, alegando, entre otros extremos, que el foro apelativo intermedio erró al determinar que el señor López Cámara se había comprometido a responder personal y solidariamente al firmar el Pagaré objeto de controversia.(17) El 28 de marzo de 2014 ordenamos a Cruz Consulting mostrar causa por la cual no debíamos expedir el recurso a los fines de dilucidar únicamente el señalamiento de error antes *508 mencionado. El 23 de abril de 2014 Cruz Consulting cumplió con nuestra Orden y presentó un escrito titulado Solicitud de Desestimación Única y Exclusivamente del Tercer Error Señalado por los Demandados-Apelantes. No obstante, se limitó a discutir asuntos jurisdiccionales y en nada cuestionó los méritos del tercer error señalado por los peticionarios.
Estando en posición para ello, resolvemos.
II
A. Los instrumentos negociables y la Ley de Transacciones Comerciales
En innumerables ocasiones hemos reiterado que una ley especial que rige una materia prevalece sobre una ley general. Art. 12 del Código Civil de Puerto Rico, 31 LPRA sec. 12; S.L.G. Vázquez-Ibáñez v. De Jesús, Vélez, 180 DPR 387, 398 (2010); Mun. de San Juan v. Prof. Research, 171 DPR 219, 236 (2007); Córdova & Simonpietri v. Crown American, 112 DPR 797, 800 (1982). En nuestra jurisdicción, los instrumentos negociables están regulados por la Ley Núm. 208-1995, según enmendada, conocida como Ley de Transacciones Comerciales,(18) 19 LPRA see. 401 et seq.(19) La Asamblea Legislativa adoptó la Ley Núm. 208-1995 para simplificar, clarificar y modernizar el Derecho que rige las transacciones comerciales, uniformar el Derecho entre las diversas jurisdicciones existentes y per *509 mitir la continua expansión de las prácticas comerciales. Sec. 1-102 de la Ley Núm. 208-1995 (19 LPRA see. 401). Véase, además, la Exposición de Motivos de la Ley Núm. 208-1995, supra, 1995 (Parte 1) Leyes de Puerto Rico 1012.
Al igual que ha ocurrido en los cincuenta (50) estados de los Estados Unidos en sus respectivas legislaciones relacionadas con las transacciones comerciales, la Ley Núm. 208-1995 se deriva de ciertos capítulos del Uniform Commercial Code (en adelante, UCC). Exposición de Motivos de la Ley Núm. 208-1995, supra. Por tal motivo, hemos resuelto que, a pesar de que la Sec. 1-103 de la Ley Núm. 208-1995 (19 LPRA see. 402), dispone que los principios generales del Derecho que imperan en nuestra jurisdicción aplicarán de modo supletorio, la Sec. 1-102 de la Ley Núm. 208-1995, supra, establece que la ley tiene un propósito uniformador que debe regir la resolución de controversias sobre los principios generales del Derecho, aun cuando estos pudieran aplicar a una controversia en particular. COSSEC et al. v. González López et al., 179 DPR 793, 811-812 (2010).(20) Véase, además, St. Paul Fire & Marine v. Caguas Fed. Savs., 121 DPR 761 (1988).
Un instrumento negociable es un documento o un escrito que tiene la cualidad de ser transmitido a cambio de un precio o una contraprestación. M.R. Garay Aubán, Derecho cambiario de Estados Unidos y Puerto Rico, Ponce, Ed. Revista de Derecho Puertorriqueño, 1999, pág. 1. Se trata de una clase de documento de crédito “que incorpor[a] el derecho a cobrar una suma de dinero, y a los cuales el Derecho Cambiario confiere una especial facilidad *510 para circular y otras características peculiares”. Id. En términos más sencillos, pueden considerarse como documentos que comprueban una deuda o un crédito y que pueden negociarse conforme a la ley. L.M. Negrón Portillo, Derecho cambiario de Puerto Rico: instrumentos negociables, [s.l.], [ed. del autor], 1995, pág. 7.
Por su parte, la Ley Núm. 208-1995 define instrumento negociable como
[...] una promesa o una orden incondicional de pago de una cantidad específica de dinero, con o sin intereses u otros cargos descritos en la promesa u orden, si el mismo:
(1) Es pagadero al portador o a la orden al momento de su emisión o cuando primero adviene a la posesión de un tenedor;
(2) es pagadero a la presentación o en una fecha específica, y
(3) no especifica otro compromiso o instrucción por parte de la persona que promete u ordena el pago que no sea el pago del dinero [...](21) Sec. 2-104(a) de la Ley Núm. 208-1995 (19 LPRA sec. 504(a)).
Entre los instrumentos negociables modernos más utilizados se encuentran las letras de cambio o giros, los cheques y los pagarés. COSSEC et al. v. González López et al., supra, pág. 799. Hablamos de la existencia de un pagaré cuando el instrumento negociable en cuestión se trata de una promesa. See. 2-104(e) de la Ley Núm. 208-1995 (19 LPRA sec. 504(e)).
Ahora bien, una promesa significa “un compromiso escrito de pagar dinero suscrito por la persona que se obliga a pagar”. See. 2-103(a)(9) de la Ley Núm. 208-1995 (19 LPRA sec. 503(a)(9)). Añade la misma sección que “[e]l reconocimiento de una obligación por el deudor no es una promesa a menos que el deudor se comprometa a pagar la obligación”. íd. De lo anterior se puede colegir que “existe *511 un pagaré cuando hay un compromiso escrito de pagar el dinero suscrito por la persona que se obliga a pagar”. Soto Solá v. Registradora, 189 DPR 653, 663 (2013).
Un pagaré se entiende que es pagadero en fecha específica cuando debe pagarse “luego de transcurrido un período específico de tiempo desde su presentación o aceptación, o en una fecha o fechas fijas, o en un momento o momentos de tiempo fácilmente determinables [...]”. (Énfasis nuestro). Sec. 2-108(b) de la Ley Núm. 208-1995 (19 LPRA sec. 508(b)). Además, se considera que un pagaré es pagadero a la orden cuando: (a) es pagadero a la orden de una persona identificada o (b) es pagadero a una persona identificada o a su orden. Sec. 2-109(b) de la Ley Núm. 208-1995 (19 LPRA sec. 509(b)).
B. El principio de literalidad y la responsabilidad de las partes por el pago de un instrumento
Debido a que la controversia de autos gira en torno a quienes están obligados a responder por una deuda evidenciada mediante un pagaré, es de particular importancia que discutamos en qué circunstancias una persona queda obligada a responder por las obligaciones contenidas en un instrumento negociable. Para ello, debemos tener presente ciertos principios del derecho cambiario.
Conforme a la obra del tratadista Miguel Garay Aubán, el principio fundamental del derecho cambiario es el de la incorporación del derecho al título. Garay Aubán, op. cit., pág. 9. Este principio significa que “un instrumento negociable no es una mera evidencia de una obligación que existe, se modifica o se extingue fuera del instrumento”, sino que “la obligación representada en el instrumento está inseparablemente unida a éste y se transmite mediante la transmisión del instrumento mismo”, siempre y cuando el instrumento se encuentre en manos de un tenedor de buena fe. Id., pág. 9, citando a R. Uria, Derecho mercantil, 4ta ed., Madrid, Imprenta Aguirre, 1964, pág. 911. Del *512 mencionado principio fundamental se derivan otros principios del derecho cambiario, entre los cuales se encuentra el principio de literalidad.(22) Id., citando a A. Ruiz de Velasco, Manual de derecho mercantil, 4ta ed., Bilbao, Ed. Deusto, 1992, pág. 441.
Cuando hablamos del principio de literalidad nos referimos a que una persona que posee un instrumento negociable “tiene derecho a descansar en que el derecho incorporado al instrumento es precisamente lo que está escrito en el instrumento”. Garay Aubán, op. cit., pág. 9. Este principio se puede manifestar de maneras diferentes: (a) en cuanto a la negociabilidad del instrumento; (b) en cuanto a la redacción de un instrumento sin haber completado sus términos y que es posteriormente completado por un tercero sin autorización para ello; (c) cuando una irregularidad, como una falsificación o una alteración, afecta el derecho declarado en el instrumento, y (d) en cuanto a la responsabilidad de las personas que firman el instrumento, ya sea en su carácter personal o en capacidad representativa.(23) Id., págs. 9-12. La vertiente del principio de literalidad en cuanto a la responsabilidad de los firmantes de un instrumento es la que nos atañe, con particular énfasis en lo siguiente:
[L]a persona que toma un instrumento negociable tiene derecho a descansar en que la persona o personas que aparecen firmando en el instrumento (y quienes por lo tanto son responsables en alguna forma por su pago) son las personas efectivamente obligadas bajo el instrumento. Si un firmante no indica *513 claramente en el instrumento que está representando a otra persona, la [Ley de Transacciones Comerciales] establece una presunción (que es incontrovertible cuando el instrumento está en manos de un tenedor de buena fe que no tenga aviso de la representación) de que el verdadero firmante es el representante. (Énfasis nuestro, én el original y escolio omitido). Garay Aubán, op. cit., pág. 10.
De manera similar y sin mencionarlo expresamente, el tratadista Basilio Santiago Romero alude al principio de literalidad en cuanto a la responsabilidad de los firmantes en un instrumento negociable, al expresar que “aunque la intención del agente sea obligar a su principal y no obligarse él personalmente, el factor determinante resulta ser lo que aparezca o se desprenda de la firma y el documento”.(24) (Énfasis nuestro). B. Santiago Romero, Tratado de instrumentos negociables: Ley Uniforme de Instrumentos Negociables de Puerto Rico y Ley del Código Uniforme de Comercio de Estados Unidos, 2da ed. rev., Río Piedras, Ed. Universitaria, 1981, pág. 123.
El principio de literalidad permea las disposiciones de la Ley Núm. 208-1995. Así, la Sec. 2-401(a) de la Ley Núm. 208-1995 dispone que una persona no es responsable por el pago de un instrumento negociable a no ser que haya firmado el instrumento, o que se encuentre representada en el instrumento por un agente o un representante que lo firmó y cuya firma obliga a la persona representada de acuerdo con lo dispuesto en la ley. 19 LPRA see. 651(a). Como veremos a continuación, el propio estatuto dispone ciertas reglas a seguir para casos en los que la firma de un instrumento negociable se realizó en capacidad representativa.
En situaciones en las cuales una persona suscriba un instrumento actuando o pretendiendo actuar como representante de otra, ya sea firmando su propio nombre o el *514 nombre del representado, la Sec. 2-402(a) de la Ley Núm. 208-1995 dispone que “la persona representada queda obligada por la firma en la misma medida en que lo hubiera quedado si la firma hubiese sido escrita en un contrato simple”. 19 LPRA sec. 652(a). Cuando la persona representada se encuentra obligada por la firma de su representante, la firma del representante se considera como “ ‘la firma autorizada de la persona representada’ ”, en cuyo caso “la persona representada es responsable por el instrumento esté o no identificada en el mismo”. Id. Esto quiere decir que una persona representada quedaría obligada en un instrumento negociable si, conforme a nuestro Derecho de Obligaciones y la figura del mandato, el representado hubiese quedado obligado por su representante en un contrato regular regido por el Código Civil. Garay Aubán, op. cit., págs. 288-289.
En cuanto a la responsabilidad personal del representante que firma un instrumento negociable, la See. 2-402(b) de la Ley Núm. 208-1995 provee unas reglas a seguir cuando la firma del representante es una firma autorizada de la persona representada. 19 LPRA sec. 652(b). La primera regla la encontramos en la Sec. 2-402(b)(l) de la Ley Núm. 208-1995, la cual dispone que “[s]¿ la forma de la firma demuestra fuera de toda ambigüedad que la firma fue hecha a nombre de la persona representada que está identificada en el instrumento, el representante no es responsable bajo el instrumento”. (Enfasis nuestro). 19 LPRA sec. 652(b)(1).
Lo anterior significa que existen tres (3) requisitos para que una persona que firma como representante de otra no responda por el pago de un instrumento negociable: (1) la firma del representante debe obligar a la persona representada conforme a nuestros principios generales del Derecho; (2) la forma de la firma del representante debe indicar fuera de toda ambigüedad, es decir, debe demostrar inequívocamente que se realizó en carácter representativo, *515 y (3) la persona representada debe estar identificada en el instrumento.(25) De concurrir todos los requisitos, el representante no será responsable por el pago del instrumento negociable.
Por otro lado, la Sec. 2-402(b)(2) de la Ley Núm. 208-1995 dispone que en aquellos casos donde la forma de la firma no demuestra fuera de toda ambigüedad que la firma fue hecha en capacidad representativa, o que la persona representada no se encuentra identificada en el instrumento, “el representante es responsable bajo el instrumento ante un tenedor de buena fe que tomó el instrumento sin tener aviso de que el representante no tenía la intención de ser responsable bajo el instrumento”. 19 LPRA sec. 652(b)(2). Ante cualquier otra persona —que no sea tenedor de buena fe— “el representante es responsable bajo el instrumento a menos que pruebe que las partes originales no tuvieron la intención de hacerlo responsable bajo el instrumento”.(26) íd. Con relación a estas circunstancias donde existe ambigüedad, explica Garay Aubán que ante un tenedor de buena fe, “el representante siempre responde, aunque se pruebe que las partes originales no tuvieron intención de que el representante respondiera”. (Énfasis suprimido). Garay Aubán, op. cit., pág. 291. En otras palabras, en estas circunstancias existe una presunción incontrovertible de que el representante responde por *516 el pagaré. íd. A contrario sensu, cuando la firma es ambigua y el representante no se enfrenta ante un tenedor de buena fe, “puede librarse de responsabilidad si prueba que las partes originales no tuvieron la intención de hacer responsable al representante por el instrumento”, en cuyo caso estamos ante una presunción controvertible de que el representante es responsable. (Énfasis suprimido). Id.
Las Secs. 2-401 y 2-402 de la Ley Núm. 208-1995, supra, provienen de las Secs. 3-401 y 3-402 del UCC, UCC sees. 3-401 y 3-402 (rev. 2002). Al igual que nuestro estatuto local, la Sec. 3-402(b)(l) del UCC dispone que cuando la firma del representante obliga al representado y demuestra fuera de toda ambigüedad que fue hecha en carácter representativo y a nombre de la persona identificada en el instrumento, el representante no es responsable bajo el instrumento. UCC sec. 3-402(b)(l) (rev. 2002). Véanse: W.D. Warren y S.D. Walt, Payments and Credits, 8va ed., Nueva York, Ed. Foundation Press, 2011, pág. 102 (“If it is clear that an agent is signing on behalf of a named principal, only the principal is bound”); 6B Anderson, Uniform Commercial Code Sec. 3-402:7 (3ra ed. 2013) (“[T]he representative is not liable on the instrument ‘[i]f the form of the signature shows unambiguously’ that the signature was made on behalf of the represented person and that person is identified in the instrument”); 6 Hawkland, Uniform Commercial Code Series Sec. 3-402:2 (2013) (“An authorized representative who signs his own name to an instrument is not personally liable if the form of the signature shows unambiguously that it is made on behalf of a represented person who is identified in the instrument”).(27)
*517 HH H—I
Según anticipamos, únicamente atenderemos el tercer error señalado por los peticionarios en su recurso de certiorari, particularmente, si incidió el Tribunal de Apelaciones al dictaminar que los peticionarios respondían en su carácter personal y de manera solidaria por la deuda contraída por El Legado mediante el Pagaré.
En apoyo a su contención, los peticionarios arguyen que el señor López Cámara firmó el Pagaré objeto de controversia como Presidente y representante de las corporaciones T/MG Corp., Inc. y Potrero Matos, Inc., quienes son Socias Gestoras de El Legado, por lo que el primero no responde en su carácter personal por el pago de la obligación dineraria contenida en el Pagaré.(28) Además, sostienen los peticionarios que no son, ni en momento alguno han sido, socios de El Legado y que de ninguno de los documentos firmados entre las partes, incluyendo el Mutual Release y el Pagaré, surge que los peticionarios se hubieran responsabilizado en su carácter personal por las deudas contraídas por El Legado. Así las cosas, entienden que se equivocó tanto el foro apelativo intermedio como el foro primario al interpretar que la intención del señor López Cámara al otorgar el Pagaré era responsabilizarse en su carácter personal como parte de las garantías ofrecidas a Cruz Consulting. En su intento de persuadirnos a revocar el dictamen recurrido, los peticionarios apoyan su teoría en la doctrina general de los contratos contenida en el Código Civil de Puerto Rico, 31 LPRA sees. 3371-3525, y su jurisprudencia interpretativa.
Es de particular importancia resaltar el hecho de que a pesar de que la controversia de autos gira en torno a quiénes son responsables por el pago de un instrumento nego *518 ciable, ni los tribunales recurridos ni las partes aluden a la existencia y pertinencia de la Ley Núm. 208-1995. Tratándose de documentos a los cuales nuestro ordenamiento jurídico les confiere unas características especiales, para resolver la controversia de autos primeramente debemos acudir a las disposiciones de la Ley Núm. 208-1995, que es la ley especial que rige lo relacionado a instrumentos negociables. Solo en casos donde las disposiciones de la Ley Núm. 208-1995, el UCC o la jurisprudencia de otras jurisdicciones no nos permiten disponer de la controversia, es que acudimos a los principios generales del Derecho y a nuestro Código Civil, supra, de manera supletoria, según dispone la Sec. 1-103 de la Ley Núm. 208-1995, supra. Véase COSSEC et al. v. González López et al., supra.
Así las cosas, como cuestión de umbral, debemos examinar el documento objeto de controversia para determinar si se trata de un instrumento negociable conforme a los requisitos dispuestos en la Ley Núm. 208-1995. Luego de analizar el documento, es forzoso determinar que en efecto estamos ante un instrumento negociable porque: (1) consta por escrito; (2) es pagadero a una persona determinada o a su orden, y (3) contiene una promesa incondicional de pa-gar una suma determinada de dinero en una fecha específica.(29) Por lo tanto, es forzoso concluir que el Pagaré cumple con las exigencias de la Ley Núm. 208-1995 para ser un instrumento negociable. Además, es evidente que estamos ante un pagaré, ya que se trata de una promesa de pagar una suma de dinero, y está suscrito por la persona que se obliga a pagar. Así las cosas, contrario a las alegaciones de las partes y lo resuelto por los foros recurridos, debemos acudir a las disposiciones de la Ley Núm. 208-1995 para resolver la controversia de autos.(30)
Habiendo resuelto que estamos ante un instrumento negociable, procede analizar el Pagaré a la luz de la *519 Sec. 2-402 de la Ley Núm. 208-1995, supra, para determinar si los peticionarios se obligaron personalmente por la deuda que contrajo El Legado. A pesar de que esta es la primera vez que nos expresamos en cuanto a este particular, la Sec. 2-402 de la Ley Núm. 208-1995, supra, es diáfana. Con meridiana claridad dispone que si la firma del representante en el instrumento negociable obliga a la persona representada —asunto que debe ser determinado conforme a la figura del mandato— y la forma de la firma demuestra fuera de toda ambigüedad que fue realizada como representante de la persona representada identificada en el instrumento, el representante no es responsable en su carácter personal. Sec. 2-402(b)(l) de la Ley Núm. 208-1995, supra. Por el contrario, únicamente en casos en donde existe ambigüedad en cuanto al carácter representativo de la firma que consta en el instrumento, o en casos en que la persona representada no se menciona en este: (1) el representante siempre será responsable ante un tenedor de buena fe y (2) ante cualquier otra persona, será responsable a menos que pruebe que las partes originales no tuvieron la intención de hacerlo responsable bajo el instrumento. See. 2-402(b)(2) de la Ley Núm. 208-1995, supra.
En primer lugar, aclaramos que no está en controversia el hecho de que el señor López Cámara es un representante autorizado de El Legado. Así lo reconoció Cruz Consulting al otorgar los Contratos de Servicio y el Contrato de Transacción, documentos en los cuales el señor López Cámara también compareció como representante de El Legado. Más aún, en cuanto al Pagaré, el carácter representativo del señor López Cámara fue admitido por Cruz Consulting en sus escritos presentencia.(31) Quedando esta *520 blecida la capacidad representativa del señor López Cámara, resta por determinar si la forma de la firma en el Pagaré demuestra fuera de toda ambigüedad que fue hecha en carácter representativo.
Para facilitar nuestra discusión, a continuación transcribimos la sección de las firmas al pie del Pagaré:
El Legado de Chi Chi Rodríguez Golf Resort

[Firma]

Por: Juan A. Rodríguez, como Socio gestor (“Managing Partner”) de El Legado de Chi Chi Rodríguez Golf Resort, S.E.

[Firma]

Por: Joaquín López Cámara, como Socio gestor (“Managing Partner”) de El Legado de Chi Chi Rodríguez Golf Resort, S.E.(32)
*521 Se puede observar claramente que las firmas de los señores López Cámara y Rodríguez Vilá se realizaron como representantes de El Legado, quien está identificado en el instrumento. Así lo dispone expresa e inequívocamente el propio Pagaré al indicar que ambos firman como Socios Gestores de El Legado.(33) Además, la ausencia de ambigüedad fue admitida por Cruz Consulting durante el trámite procesal de la controversia de autos cuando alegó que “como cuestión de hecho de la faz del mismo Pagar [é] se desprende que [el señor López Cámara] otorg[ó] el mismo como Socio Gestor de [El Legado] ”.(34)
Contrario a lo resuelto por los tribunales de menor jerarquía, en este caso no era necesario indagar sobre cuál fue la intención de los peticionarios al momento de otorgar y entregar el Pagaré a Cruz Consulting. Según la See. 2-402(b)(2) de la Ley Núm. 208-1995, supra, la intención de las partes es pertinente únicamente cuando la firma del representante no demuestra fuera de toda ambigüedad que fue realizada en carácter representativo.(35)
*522 Por lo tanto, debido a que la Sec. 2-402(b)(l) de la Ley Núm. 208-1995, supra, dispone que si la firma del representante es una firma autorizada de la persona representada y demuestra fuera de toda ambigüedad que fue hecha en carácter representativo y a nombre de la persona identificada en el propio instrumento negociable, el representante no responde. Por consiguiente, resolvemos que los peticionarios no son responsables por el Pagaré objeto de controversia en su carácter personal.
> HH
Por todo lo anterior, expedimos el auto de certiorari, revocamos la Sentencia del Tribunal de Apelaciones y resolve-mos que conforme a las disposiciones de la Ley Núm. 208-1995, que es el estatuto aplicable a la controversia de autos, los peticionarios no son responsables por el pago del Pagaré en su carácter personal. Por consiguiente, El Legado es quien únicamente se obligó a responder por la deuda objeto del Contrato de Transacción y el Pagaré. Tratándose de una sociedad especial con personalidad jurídica independiente de sus socios, entiéndase, el señor Rodríguez Vilá y las corporaciones TM/G Corp., Inc. y Potrero Matos, Inc., estos solo responden en caso de que los activos de El Legado no alcancen para cubrir lo adeudado y de manera limitada hasta el monto de sus respectivas aportaciones de capital.(36)

*523
Se dictará sentencia de conformidad.

El Juez Asociado Señor Martínez Torres disintió con una opinión escrita.

 Véase la Escritura Núm. 53 titulada Deed of Amended and Restated Special Partnership, Apéndice del Certiorari, págs. 143-167. Anteriormente las mismas partes habían otorgado otras dos (2) escrituras: (1) el señor Rodríguez Vilá, el Sr. José A. Marcano Figueroa y las corporaciones T/MG Corp., Inc. y Potrero Matos, Inc., otorgaron una primera Escritura el 19 de abril de 2001 con el propósito de constituir una sociedad especial en comandita que se llamaría Puerto Rico Golf Resort (S.C.) S.E, y (2) las mismas partes, excepto el señor Marcano Figueroa, otorgaron una segunda Escritura el 26 de octubre de 2001 a los efectos de remover al señor Marcano Figueroa como socio, pues este deseaba separarse de la sociedad que habían constituido previamente. Véanse las Escrituras Núms. 21 y 52, Apéndice del Certiorari, págs. 121 y 142.

 Véase el Contrato titulado Contrato para la provisión de señal de CATV, Apéndice del Certiorari, págs. 174-176.

 Véase el Contrato titulado Contrato para la provisión de cajas y módulos para las casas inteligentes, Apéndice del Certiorari, págs. 177-179.

 Véase el Contrato titulado Contrato para la administración, el uso y derecho de paso de la infraestructura de conductos y registros de comunicaciones, Apéndice del Certiorari, págs. 168-173.

 Los primeros dos (2) Contratos fueron firmados por el Sr. José Luis Cruz, como representante de Cruz Consulting, y los señores López Cámara y Jesús Rodríguez Vilá, como representantes de El Legado. En el tercer Contrato compareció el señor López Cámara como representante de El Legado Home Owners Association, Inc., mientras que el Sr. Jesús Rodríguez Vilá compareció como representante de El Legado. Como de costumbre, el señor Cruz compareció a nombre de Cruz Consulting.

 Véase la determinación de hecho número 5 de la Sentencia emitida por el Tribunal de Primera Instancia, Apéndice del Certiorari, pág. 101.

 Véase el Contrato titulado Mutual Release, Apéndice del Certiorari, págs. 180-186.

 íd., pág. 185.

 Véase el Pagaré otorgado entre las partes, Apéndice del Certiorari, pág. 272.

 íd.

 íd.

 En su Contestación a la Demanda y Reconvención, El Legado aceptó la existencia del Pagaré y, a su vez, invocó las doctrinas de los actos propios y enriquecimiento injusto contra Cruz Consulting. Inter alia, El Legado también reclamó la nulidad del Contrato de Transacción y el correspondiente Pagaré, ya que su consentimiento en cuanto al Mutual Release estaba viciado. Alegó que Cruz Consulting le había representado que el valor de los equipos de telecomunicaciones que retendría se aplicaría a la deuda reclamada mediante la figura de compensación, lo cual Cruz Consulting no hizo. Además, alegó que el valor de tales equipos era sustancialmente menor al alegado por Cruz Consulting. Apéndice del Certiorari, págs. 390-394.

 En una fecha posterior, la Demanda fue enmendada para incluir a las corporaciones T/MG Corp., Inc. y Potrero Matos, Inc. como codemandadas. La Demanda fue enmendada en una segunda ocasión para incluir como demandante al Sr. José Luis Cruz Cruz.

 Véase la Sentencia del Tribunal de Primera Instancia en la controversia de autos, Apéndice del Certiorari, pág. 109.

 El matrimonio Rodríguez-Rodríguez también presentó un recurso de apelación ante el Tribunal de Apelaciones. Ambos recursos fueron consolidados por el foro apelativo intermedio. Sin embargo, quienes únicos recurrieron ante este Tribunal fueron los peticionarios, por lo que en adelante limitamos nuestra discusión a lo alegado por ellos.

 Previo a la enmienda nunc pro tunc, el foro apelativo intermedio emitió la Sentencia original el 30 de agosto de 2013 y la notificó el 11 de septiembre de 2013.

 Además, los peticionarios señalaron que el foro apelativo intermedio erró al determinar que tanto la señora Matos Garratón como la Sociedad de Bienes Gananciales compuesta por ella y el señor López Cámara, respondían por la deuda imputada. Sin embargo, debido a que podemos disponer de la controversia atendiendo únicamente el tercer señalamiento de error, es innecesario expresarnos en cuanto a los demás.

 Al momento de su aprobación, la Ley Núm. 208-1995 (19 LPRA see. 401 et seq.) se conocía como la Ley de Instrumentos Negociables. Mediante la aprobación de la Ley Núm. 241-1996 se enmendó la ley para cambiar su título a Ley de Transacciones Comerciales, entre otros asuntos.

 En París v. Canety, 73 DPR 403 (1952), este Tribunal se enfrentó a una controversia en donde los allí peticionarios acudieron a las disposiciones del Código Civil para argumentar a favor de su contención. No obstante, en dicho caso se determinó que ante un pagaré que cumple con los requisitos para ser un instrumento negociable, aplicaba la entonces vigente Ley Uniforme de Instrumentos Negociables, Arts. 353-548 del Código de Comercio de 1932 (19 LPRA ants. secs. 1-386), por tratarse de la ley especial que regía la materia. París v. Canety, supra, pág. 406.

 En COSSEC et al. v. González López et al., 179 DPR 793 (2010), expresamos que conforme al propósito uniformador de la Ley Núm. 208-1995, supra, y el Uniform Commercial Code (UCC), era necesario acudir a otras jurisdicciones para resolver desde cuándo comienza a transcurrir el término prescriptivo de tres (3) años para las acciones de apropiación indebida de instrumentos negociables que dispone la See. 2-118 de la Ley Núm. 208-1995 (19 LPRA see. 518). Para una postura a favor de acudir a los principios generales del Derecho, véase COSSEC et al. v. González López et al., supra, pág. 815 (opinión disidente de la Jueza Asociada Señora Pabón Chameco).

 Por otro lado, la Sec. 2-104(a) de la Ley Núm. 208-1995 también indica que un instrumento negociable puede contener lo siguiente: “(A) un compromiso o poder para dar, mantener o proteger colateral para garantizar el pago, (B) una autorización o poder al tenedor para admitir sentencia o liquidar la colateral o disponer de ella de otra forma, o (C) una renuncia al beneficio de cualquier ley que exista concediéndole una ventaja o protección a un deudor”. 19 LPRA sec. 504(a).

 Otros principios que se derivan del mencionado principio fundamental lo son el principio de legitimación por la posesión y el principio de abstracción. Véase M.R. Garay Aubán, Derecho cambiario de Estados Unidos y Puerto Rico, Ponce, Ed. Revista de Derecho Puertorriqueño, 1999, págs. 12-17.

 El principio de literalidad lo podemos observar en cuanto al requisito de que un instrumento negociable debe contener una orden o promesa incondicional:
“[E]l hecho de que un instrumento se suscriba a la misma vez que otros documentos o contratos que condicionan su pago, no afecta la negociabilidad del instrumento, siempre y cuando en el instrumento mismo no se indique expresamente que el derecho a cobrar la suma pagadera está sujeta a los otros documentos o contratos”. Garay Aubán, op. cit., pág. 45.

 Estas expresiones surgieron durante la vigencia de la hoy derogada Ley Uniforme de Instrumentos Negociables de 1932.

 En su obra, el tratadista Garay Aubán provee un ejemplo ilustrativo de mi caso en el cual la firma del representante demuestra fuera de toda ambigüedad que fue hecha a nombre de una persona representada:
“Amanda confiere a Millonario un poder suficiente en Derecho para que éste otorgue en representación de Amanda un pagaré al portador por $100,000. En cumplimiento de su encomienda como representante, Millonario suscribe un documento que lee:
‘Pagaré al portador $100,000’
[Firma de Millonario]
Millonario como representante de Amanda”. Garay Aubán, op. cit., pág. 290.

 La Sec. 2-402(c) de la Ley Núm. 208-1995 establece una norma especial cuando la representación se da dentro del contexto del instrumento negociable conocido como cheque. 19 LPRA sec. 652(c).

 Debido a la claridad de las secciones pertinentes de la Ley Núm. 208-1995 y las secciones homologas encontradas en el UCC, resulta innecesario acudir a otras jurisdicciones para ver cómo se han interpretado estatutos similares.

 De igual manera, sostienen que el señor Rodríguez Vilá firmó el Pagaré como representante y Socio Gestor de El Legado, mas no en su carácter personal. Como mencionamos anteriormente, el señor Rodríguez Vilá no es parte en este recurso.

 Véase el Pagaré, escolio 9.

 Yéase París v. Canety, supra.

 Véase la Contestación a la Reconvención de la Demanda Enmendada, presentada por Cruz Consulting el 29 de octubre de 2008, donde expresaron que “los demandados prepararon y firmaron el Pagaré [...] como representantes de [El Legado]”. Apéndice del Certiorari, pág. 431.
Por otro lado, recordemos que la Sec. 2-402(a) de la Ley Núm. 208-1995 remite a la figura del mandato o agente al momento de determinar si un representante está *520 debidamente autorizado para comparecer a nombre de otra persona en un instrumento negociable. 19 LPEA sec. 652(a). Es harto conocido que “por ser una corporación un organismo artificial e intangible, existente solamente en correspondencia a la ley, todos sus actos han de celebrarse en representación suya por vía de agentes”. Gasolinas PR v. Registrador, 155 DPR 652, 665-666 (2001). Véase Sabalier v. Iglesias, 34 DPR 352 (1925). Por lo tanto, es “a través de sus oficiales que, de ordinario, una corporación se obliga, ya sea en virtud de la autoridad que los estatutos corporativos le hayan conferido; por autorización expresa otorgada mediante resolución corporativa; por autorización implícita; por autoridad aparente; o en casos muy limitados, [o] por virtud de cierta facultad inherente a su cargo”. Gasolinas PR v. Registrador, supra, pág. 666. C.E. Díaz Olivo, Corporaciones, San Juan, Publicaciones Puertorriqueñas, 2005, págs. 93-97. Es por ello que respetuosamente discrepamos de lo intimado en la opinión disidente del Juez Asociado Señor Martínez Torres en este caso. Basta con ojear las escrituras y contratos otorgados entre las partes para constatar que el señor López Cámara, como Presidente de las corporaciones Potrero Matos, Inc. y T/MG Corp., Inc., es un agente autorizado con capacidad para comparecer en representación de ellas en todos los negocios objeto de esta controversia, incluyendo el Pagaré, hecho que era conocido por Cruz Consulting y su representante.

 Acto seguido, el notario público que autenticó las firmas en el documento se refirió a los señores Rodríguez Vilá y López Cámara como socios gestores de El Legado. Véase el Pagaré otorgado entre las partes, escolio 9.

 Las firmas de los señores López Cámara y Rodríguez Vilá como Socios Gestores de El Legado eran necesarias para obligar a la corporación en el Pagaré: “The signature of two of the Managing Partners (one of which must be Rodriguez) shall be required (and shall be sufficient) for all checks, bank drafts, notes, and other debt instruments executed on behalf of the Partnership”. Escritura Núm. 53, Deed of Amended and Restated Special Partnership, supra, pág. 158.

 Véase la Moción en Oposición a Solicitud de Desestimación, presentada por Cruz Consulting el 20 de junio de 2007, Apéndice del Certiorari, pág. 212.

 n0 imp0rta divagar en cuanto a cuál fue la intención de las partes al consignar la siguiente expresión en el último párrafo del Pagaré: “[e]ste pagaré está garantizado con un escrito bajo juramento consintiendo a que se dicte Sentencia sin la celebración de Juicio, condenando a la suscribiente y/o sus representantes al pago (...)”. Pagaré, supra, escolio 9. Según discutido, la Ley Núm. 208-1995 remite a la firma del instrumento negociable a la hora de determinar la responsabilidad por el pago de este.
En ese sentido también discrepamos de la opinión disidente emitida por el hermano Juez Asociado Señor Martínez Torres. En esta expresa que la interpretación que realizamos de la Ley Núm. 208-1995 es incorrecta debido a que limitamos nuestro análisis a las firmas del Pagaré. Por otro lado, sostiene que las firmas deben analizarse en conjunto con el resto del instrumento, ya que “lo importante es lo que se desprende del contenido de la faz del documento”. Opinión disidente del Juez Asociado Señor Martínez Torres, pág. 10. Para justificar su argumento, utiliza una cita de la obra de Basilio Santiago Romero que no tiene el alcance sugerido. Lo que el tratadista explica en su obra es que bajo la vigencia de la derogada Ley Uniforme de Instrumentos Negociables, independientemente del estado mental de quien preten *522 día firmar como representante de otro, lo importante era lo que surgía de la firma del instrumento negociable, es decir, de la faz del documento, en casos en los que la persona representada no aparecía mencionada en este. Véase B. Santiago Romero, Tratado de instrumentos negociables: Ley Uniforme de Instrumentos Negociables de Puerto Rico y Ley del Código Uniforme de Comercio de Estados Unidos, 2da ed. rev., Río Piedras, Ed. Universitaria, 1981, pág. 123. Por tal motivo, la misma cita fue utilizada en el cuerpo de esta Opinión Mayoritaria como una manifestación del principio de literalidad. De hecho, acto seguido, Santiago Romero discute otras disposiciones de la antigua ley que también remitían a la firma a la hora de determinar la responsabilidad de un representante. Id., págs. 124—130.

 En cuanto a la responsabilidad limitada de los socios de una sociedad especial, véase el Art. 1589 del Código Civil, 31 LPRA see. 4372. Véanse, además: Quiñones Reyes v. Registrador, 175 DPR 861, 875-876 (2009); Marcial v. Tomé, 144 DPR 522, 544-545 (1997). Por otra parte, surge del expediente que El Legado se acogió al *523 Capítulo 11 de la Ley de Quiebras, por lo que el pago de la deuda reclamada dependerá de los procedimientos ante el Tribunal de Quiebras para el Distrito de Puerto Rico. Aunque no fue alegado por las partes, aclaramos que para efectos de la controversia que hoy resolvemos no aplica la paralización automática de los procedimientos que provee la See. 362 del Código de Quiebras, 11USC see. 362. Salvo circunstancias excepcionales, la protección que provee la paralización automática únicamente aplica a procedimientos contra el deudor que está acogido a la quiebra, mas no contra codeudores solidarios. Peerless Oil v. Hnos. Torres Pérez, 186 DPR 239, 256-259 (2012). En este caso, quien únicamente está en quiebra es El Legado. Además, no surge del expediente que el Tribunal de Quiebras hubiese extendido la protección de la paralización automática a los peticionarios.